# UNITED STATES DISTRICT COURT

_____SOUTHERN_____ District of __NEW YORK__

PATRICIA A. BURKE,

           Plaintiff(s),

- against -

PRICEWATERHOUSECOOPERS LLP
LONG TERM DISABILITY PLAN AND
THE HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

           Defendant(s).

SUMMONS IN A CIVIL CASE

CASE NUMBER:

**06 CV 7683**

JUDGE CHIN

TO: (name and address of defendants)

PRICEWATERHOUSECOOPERS LLP LONG TERM DISABILITY PLAN
c/o PriceWaterHouse
1301 Avenue of the Americas
New York, New York 10019

THE HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
Hartford Plaza
Hartford, Connecticut 06115

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY, (name and address)

DEHAAN, BUSSE, BINDER & BINDER, LLP.
300 Rabro Drive
Suite 101
Hauppauge, New York 11788

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK _/s/ Marios Quintero_

(BY) DEPUTY CLERK

DATE  SEP 2 5 2006



ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PATRICIA A. BURKE,

                Plaintiff,

   – against –

PRICEWATERHOUSECOOPERS LLP LONG TERM
DISABILITY PLAN AND THE HARTFORD LIFE
AND ACCIDENT INSURANCE COMPANY,

                Defendants.
------------------------------------X

JUDGE CHIN

06 CV 7683

Civil Action No.:

COMPLAINT



Plaintiff, Patricia A. Burke, by her attorneys, DEHAAN, BUSSE, BINDER & BINDER, LLP, for her Complaint against the Defendants, PricewaterhouseCoopers LLP Long Term Disability Plan (the "LTD Plan") and The Hartford Life and Accident Insurance Company ("Hartford"), hereby alleges as follows:

### JURISDICTION AND VENUE

1.    Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.    Under the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001, et seq.) ("ERISA"), the long-term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits. Plaintiff has exhausted all administrative avenues of appeal and has received a final denial. Therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

3. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2), which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place or where a defendant resides or may be found.

4. PricewaterhouseCoopers LLP ("Pricewaterhouse"), is the named Plan Administrator, with a home office located at 1301 Avenue of the Americas, New York, New York 10019. Therefore, venue is proper in the Southern District of New York because that is where the LTD Plan is administered.

### NATURE OF ACTION

5. This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee benefit welfare plan.

6. The LTD Plan provides long term disability benefits to employees of Pricewaterhouse. As such, the LTD Plan is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, and ERISA applies to this action. Said benefits were effective at all times relevant hereto.

7. Claims for benefits are administered and paid through a Group Insurance Policy, No. GLT 673035, issued by Defendant, Hartford. Defendant, Hartford, has made all of the claims decisions in this matter.

### STANDARD OF REVIEW

8. While the LTD Plan in force at the time Plaintiff became disabled does contain a grant of discretion to Hartford, this Court must nonetheless conduct a *de novo* review of the denial of Plaintiff's claim as Hartford was operating under an actual conflict of interest.

9. Hartford, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. In this position, Hartford could significantly reduce its operating expenses, and increase its profits, simply by denying claims. This would be a direct dollar-for-dollar effect. As such,

Hartford is operating under a significant conflict of interest which had a material effect on its decision on this claim.

10. A *de novo* review should also apply because according to the New York State Insurance Department Circular Letter No. 8 (March 27, 2006), discretionary clauses are a violation of the Insurance Law. The Circular Letter states:

> The Department has determined that the use of discretionary clauses violates Sections 3201(c) and 4308(a) of the Insurance Law in that the provisions "encourage misrepresentation or are unjust, unfair, inequitable, misleading, deceptive, or contrary to law or to the public policy of this state." Additionally, the Department believes that the use of discretionary clauses is an unfair or deceptive or practice, within the meaning of Article 24 of the Insurance Law. Consequently, in accordance with Sections 3201 and 4308 of the Insurance Law, discretionary clause provision in accident and health insurance policies and in subscriber contracts will no longer be approved by the Department.

### THE PARTIES

11. Plaintiff was born in January 1962, is presently 44 years old, and is a resident of Blauvelt, New York.

12. Defendant, the LTD Plan, is an employee benefit welfare plan, as defined by ERISA. Pricewaterhouse is the named Plan Administrator and the agent for service of legal process, with a home office located at 1301 Avenue of the Americas, New York, New York 10019.

13. Defendant, Hartford, is an incorporated insurance company licensed to conduct the business of insurance in New York. Hartford is the named Claims Administrator. Hartford's address is Hartford Plaza, Hartford, Connecticut 06115.

## STATEMENT OF FACTS

Plaintiff's Occupation:

14. Plaintiff became an employee of Pricewaterhouse in December, 1987. Plaintiff continued working for Pricewaterhouse through April 21, 2002, on which date she became disabled. As such, she was a covered participant in the LTD Plan.

15. Prior to and including April 21, 2002, Plaintiff was employed by Pricewaterhouse as a Learning and Education Manager. In this capacity, Plaintiff was responsible for developing and deploying interactive continuing education programs for Pricewaterhouse's worldwide professional accounting and auditing personnel. This included carrying computers, boxes and computer peripherals; and setting up and taking down displays. Plaintiff was also required to travel regularly either by car or by airplane.

16. According to the DICTIONARY OF OCCUPATIONAL TITLES (4th Ed. Rev. 1991) (the "DOT"), Plaintiff's occupation most closely resembles that of a Manager, Education and Training, 166.167-026. As such, Plaintiff's occupation must be considered light work.

17. Plaintiff's pre-disability income was about $85,000.00 per year.

18. For the period beginning prior to April 21, 2002, and at all relevant times hereto, Plaintiff, together with other regular employees of Pricewaterhouse, was covered as a participant under the LTD Plan.

The Terms of the LTD Plan:

19. The LTD Plan provides benefits to its participants through a Group Insurance Policy (the "Group Policy") issued and administered by Hartford.

20. The Group Policy provides for payment of monthly benefits to eligible employees, and is designed to protect employees against a loss of earned income during periods of extended disability. Immediately prior to the onset of her disability, Plaintiff was an "Active Benefits Eligible Employee," scheduled to work 1,000 or more hours annually, and as such, was covered under the Group Policy.

21. Hartford, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. In this position, Hartford could significantly reduce its operating expenses, and increase its profits, simply by denying claims. This would be a direct dollar-for-dollar effect. As such, Hartford is operating under a significant conflict of interest which had a material effect on its decision on this claim.

22. The monthly benefit is determined based on a set percentage (60%) of the employee's pre-disability earnings, with a maximum monthly benefit of $30,000. The monthly benefit is reduced by "Other Income Benefits," which includes benefits received pursuant to the United States Social Security Act.

23. In Plaintiff's case, the Group Policy provides for a benefit of approximately $4,205.00 per month, less the amount of "Other Income Benefits," as defined by the Group Policy.

24. Long Term Disability benefits are to commence after an "Elimination Period" consisting of either the first 26 consecutive weeks of any one period of Disability; or with the exception of benefits required by state law, the expiration of any Employer sponsored short term disability benefits or salary continuation program, whichever is the last to be satisfied.

25. In the instant matter, Plaintiff was initially awarded Long Term Disability ("LTD") benefits commencing on October 21, 2002, upon exhaustion of her Short Term Disability ("STD") benefits.

26. The maximum benefit period under the LTD Plan extends to the claimant's 65th birthday, provided the period of total disability begins prior to age 63, which is the case herein.

27. The Group Policy defines " Disability" or "Disabled" as follows:

> ***Disability or Disabled*** *means that during the Elimination Period and for the next 60 months You are prevented by:*
> 1. *accidental bodily injury;*
> 2. *sickness;*
> 3. *Mental Illness;*
> 4. *Substance Abuse; or*
> 5. *pregnancy,*
>
> *from performing one or more of the Essential Duties of Your Occupation, and as a result Your Current Monthly Earnings are no more than 80% of Your Indexed Pre-disability Earnings.*

> *After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.*
>
> *Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation does not alone mean that You are Disabled.*

28. The Group Policy also requires a claimant to provide Proof of Loss and be under the Regular Care of a Physician.

29. The Group Policy gives Hartford the right to examine Plaintiff. The LTD Plan states:

> ***What additional Proof of Loss are we entitled to?***
> *We may have You examined to determine if You are Disabled. Any such examination will be:*
> *1.   at our expense; and*
> *2.   as reasonably required by us.*

30. The Group Policy requires Plaintiff to apply for Social Security Disability benefits. Further, if the Social Security Administration denies a claimant's eligibility, the claimant must file for reconsideration of the denial, and if denied again, request a hearing before an Administrative Law Judge.

31. Thus, Hartford actively pushes claimants to pursue SSD benefits, and if SSD benefits are approved, Hartford receives a substantial financial benefit from such an award.

Plaintiff's Disability:

32. Ms. Burke has a long history of right knee impairments dating back to 1983. Plaintiff was forced to stop working on April 21, 2002, due to Osteoarthritis of the right knee.

33. Plaintiff was diagnosed with the above medical conditions by her treating board certified orthopedic surgeon.

34. On April 22, 2002, the day after she stopped working, Ms. Burke underwent a right knee arthroscopy and high tibial osteotomy. The post-operative diagnoses was right knee degenerative joint disease and fibrous nodule of the right knee.

35. X-rays of the right knee dated on or about September 5, 2002, revealed osteoarthritis of the knee and the non-union of osteotomy of the shaft of the fibula.

36. As a result of continued pain, on November 5, November 14, and November 21, 2002, Plaintiff underwent synvisc injections.

37. Subsequently, on December 30, 2002, Plaintiff underwent a second surgical procedure – an open reduction internal fixation of the right knee, repair and reconstruction of fibular non-union and removal of hardware. The post-operative diagnosis was right knee high tibial osteotomy with painful non-union over the right fibula.

38. In September, 2003, the orthopedic surgeon referred Plaintiff to a board certified anesthesiologist with a subspecialty in Pain Medicine.

39. In a report dated September 8, 2003, the pain management doctor noted significant tenderness in the medial femoral condyle, tibial tubercle, area around the lateral collateral ligament and either the infra-patellar nerve or the distal pens anserine bursa. He diagnosed Ms. Burke with chronic right knee pain and performed injections of the neuroma of the intra-patella branch of the saphenous nerve.

40. X-rays of the right knee dated April 20, 2004, revealed degenerative joint disease of the knee.

41. X-rays of the right knee dated August 24, 2004, revealed a healed high tibial osteotomy and severe osteoarthritis of the right knee.

42. On September 14, 2004, Plaintiff underwent a right diagnostic lumbar sympathetic block under fluoroscopy. The post-operative diagnosis was "right knee osteoarthritis status post multiple procedures, rule out sympathetic maintained pain."

43. On March 30, 2005, Plaintiff underwent a right total knee replacement. The post-operative diagnosis was osteoarthritis of the right knee.

44. On June 6, 2005, Plaintiff underwent a manipulation of the right knee under anesthesia. The post-operative diagnosis was contracture of the right knee, status post right knee replacement.

45. Ms. Burke's treating orthopedic surgeon has stated that she is permanently disabled due to the osteoarthritis in her right knee.

46. In a Lower Extremities Impairment Questionnaire, the orthopedic surgeon again noted that Ms. Burke is permanently disabled and stated that she can sit for less than one (1) hour total in a typical eight-hour workday, stand/walk for less than one (1) hour total in a typical eight-hour workday and that Ms. Burke in incapable of lifting any weight.

47. This residual functional capacity assessment indicates physical limitations which preclude even sedentary work, as defined by the DOT.

48. Plaintiff has received, and continues to receive, appropriate medical treatment for her medical conditions from her treating physicians.

### PLAINTIFF'S FIRST CAUSE OF ACTION FOR LONG-TERM DISABILITY BENEFITS

49. With regard to Plaintiff's claims for benefits under the LTD Plan, she continued to work through April 21, 2002.

50. On April 21, 2002, Plaintiff was forced to stop working because of Osteoarthritis of the right knee.

51. By letter dated September 17, 2002, Hartford notified Plaintiff that the carrier had extended her STD benefits through October 20, 2002, the Maximum Duration of Benefits.

52. Hartford is the insurer/claims administrator for the STD Plan.

53. The STD Plan defines "Disability" as follows:

> *Disability means that you are unable to perform the essential functions, duties or responsibilities of your job (as determined by the firm's STD vendor, Hartford) due to:*
>
> - *Accidental bodily injury;*
> - *Sickness;*
> - *Mental Illness;*
> - *Substance Abuse; or*
> - *Pregnancy;*
>
> *and as a result, you are earning no more than 80% of your pre-disability Weekly Earnings.*

54. The definition of "Disability" as defined in the STD Plan is essentially the same as the definition of "Disability" for the Elimination Period and the next 60 months, as defined in the LTD Plan.

55. As Plaintiff continued to be disabled following the exhaustion of her STD benefits, in compliance with the terms and conditions of the LTD Plan, Plaintiff timely applied for long-term disability insurance benefits.

56. By letter dated November 27, 2002, Hartford notified Plaintiff that her claim for LTD benefits was approved from October 21, 2002, through November 30, 2002.

57. By letter dated December 17, 2006, Hartford extended Ms. Burke's LTD benefits through February 28, 2003.

58. By letter dated May 17, 2003, Hartford notified Plaintiff that the carrier was terminating her LTD benefits beyond April 30, 2003, and that her file had been closed.

59. Hartford has, therefore, found Plaintiff to be "Disabled" from April 21, 2002, through April 30, 2003. Hartford then denied Plaintiff's claim for continued LTD benefits without any evidence of medical improvement.

60. By letter dated June 10, 2003, Plaintiff appealed Hartford's adverse determination and submitted comments regarding the Hartford's failure to provide a full and fair review.

61. In the same letter, Plaintiff also requested true, certified and complete copies of her entire claim file; a list of names, titles and qualifications of all persons who participated in, or were consulted with, in the medical evaluation and decision making of her claim; and a certified copy of her long term disability insurance policy.

62. Under a cover letter dated June 11, 2003, Hartford enclosed a copy of Plaintiff's Long Term Disability file and a copy of the telephone comments.

63. By letter dated July 10, 2003, Plaintiff questioned the completeness of her claim file and again requested a true, certified and complete copy of her claim file; the qualifications of all persons who participated in or were consulted with, in any manner, in the medical evaluation and decision making process on her claim; and a true, certified and complete copy of her long term disability insurance policy.

64.  By letter dated August 18, 2003, Plaintiff submitted a supplement to her June 10, 2003, notice of appeal.

65.  After providing Hartford with authorizations necessary to obtain her pharmacy records, Plaintiff, via telephone conversation on August 27, 2003, and by letter dated August 27, 2003, requested copies of the pharmacy records obtained by Hartford.

66.  Hartford never provided Plaintiff with copies of her pharmacy records.

67.  By letter dated September 2, 2003, Plaintiff requested the title, author, date of publication and publisher of any authoritative texts used by Hartford in evaluating her claim for LTD benefits.

68.  By letter dated October 1, 2003, Hartford notified Plaintiff that it was upholding its decision to terminate her benefits as of April 30, 2003, and noted that this is a final decision.

69.  This final denial was based, in part, on a file review conducted by Dr. Andrea Wagner, who never examined Plaintiff.

70.  Despite the terms of the Group Policy, Hartford chose to forego its right to have Plaintiff examined. As a result, the only scientifically and medically acceptable evidence has been provided by Ms. Burke's treating physicians, all of whom found her to be permanently disabled.

71.  Pursuant to the terms of the LTD Plan and Group Policy, Plaintiff has filed a claim for Social Security Disability benefits. Ms. Burke's Social Security Disability claim is still pending.

72.  In seeking to further its own pecuniary interest, Hartford has denied Plaintiff of her right to a full and fair review of the denial of her claim, as required by ERISA.

73.  Hartford, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. As such, Hartford is operating under a significant conflict of interest which had a material effect on its decision-making on the this claim.

74.  Hartford, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to Plan participants such as Ms. Burke.

75. The LTD Plan, as an employee welfare benefit plan under ERISA, also owes a fiduciary duty to Ms. Burke and other Plan participants.

76. The LTD Plan's fiduciary duty requires that it select an insurer/claims administrator who will: administer claims in accordance with plan terms; fairly and objectively apply plan terms and evaluate medical evidence; and comply with ERISA and its regulations.

77. By allowing Hartford to mishandle Plaintiff's claim as it did, the LTD Plan failed in its fiduciary duty to Ms. Burke.

78. As such, the LTD Plan failed to adequately monitor, control and correct Hartford's improper actions.

79. Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of Plan participants and beneficiaries, and strictly in conformance with the provisions of the Plan.

80. The adverse claim decisions rendered in the instant action have been made by Hartford, which has a pecuniary interest in denying claims. This pecuniary interest creates a conflict of interest, which had a direct and important effect on Hartford's decision making on Ms. Burke's LTD claim.

81. Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the Plan and thereby make decisions in accordance with Plan language.

82. Hartford's decisions were not supported by the medical evidence and were not supported by the applicable Plan language.

83. Hartford's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

84. Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff is, therefore, entitled to the receipt of continued Long-Term Disability benefits retroactive to April 30, 2003, and continuing to the present under the LTD Plan.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. That the Court declare and then determine that, under the terms of the LTD Plan, Plaintiff's disability began on April 21, 2002, and that she continues, without interruptions, to be disabled within the terms of the LTD Plan;

b. That, after making such a determination, the Court grant Plaintiff appropriate legal relief and order Defendants, the LTD Plan and Hartford, to compensate Plaintiff for her disability in accordance with the terms of the LTD Plan, retroactive to April 30, 2003;

c. That the Court award Plaintiff her attorney's fees pursuant to ERISA, 29 U.S.C. §1132(g); and

d. That Plaintiff receive such other necessary, proper and equitable relief, including interest, costs and disbursements, as to which she may be entitled.

Dated: September __, 2006
       Ronkonkoma, New York

                                    DEHAAN, BUSSE, BINDER & BINDER, LLP

                            By:     _____
                                    Patrick H. Busse (PHB 1708)
                                    300 Rabro Drive
                                    Suite 101
                                    Hauppauge, New York 11788
                                    Telephone:  (631) 648-4700
                                    Facsimile:  (631) 670-2569